**OFFICE OF THE FEDERAL PUBLIC DEFENDER**
**DISTRICT OF MARYLAND**
NORTHERN DIVISION
TOWER II, 9ᵗʰ FLOOR
100 SOUTH CHARLES STREET
BALTIMORE, MARYLAND  21201-2705
TEL:  (410) 962-3962
FAX:  (410) 962-0872

JAMES WYDA
FEDERAL PUBLIC DEFENDER

LUCIUS T. OUTLAW III
ASSISTANT FEDERAL PUBLIC DEFENDER

June 9, 2015

**VIA ECF & EMAIL**
Hon. J. Frederick Motz
U.S. District Court Judge
U.S. District Court for the District of Maryland
101 W. Lombard Street
Baltimore, MD 21201

Re: *United States v. Mark Anthony George Thompson,* (14-0470-JFM)

Dear Judge Motz:

This office represents Mr. Thompson in the above-referenced matter.   It is Mr. Thompson's intention to enter a plea of guilty to the two counts pending against him, despite the absence of an agreement with the government regarding his guilty plea.   Therefore, I am submitting this letter to explain the basis of Mr. Thompson's guilty plea and to confirm that he has knowingly and voluntarily agreed to plead guilty.

**Offenses of Conviction**

1.     Mr. Thompson agrees to plead guilty to all three counts of the Indictment which charges him with three armed bank robberies in violation of 18 U.S.C. § 2113(a), (d), & (f).  Mr. Thompson admits that he is, in fact, guilty of these offenses and will so advise the Court.

**Elements of the Offenses**

2.     The elements of 18 U.S.C. § 2113(a), (d), & (f) to which Mr. Thompson has agreed to plead guilty are as follows:

   a) First, that on the date of each alleged robbery, the institutions robbed were federally insured banks;

   b) Second, the money taken or attempted to be taken belonged to or was in the care, custody, management, or possession of each of the banks;

   c) Third, that the money was taken or attempted to be taken by force and violence, or by acting in an intimidating manner; and

1

d) Fourth, during the commission of the robberies, the defendant either assaulted another person by use of a dangerous weapon or put another person's life in jeopardy by the use of a dangerous weapon.

## Penalties

3.      The maximum sentence for each count provided by 18 U.S.C. § 2113(a), (d), & (f), to which Mr. Thompson is pleading guilty, is as follows: twenty-five (25) years imprisonment, a fine of not more than $250,000 or both, and five (5) years of supervised release. In addition, Mr. Thompson must pay $100 for each count ($300 total) as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing (unless otherwise allowed by the Court).

4.      Mr. Thompson understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and he could be returned to custody to serve another period of incarceration and a new term of supervised release.

5.      Mr. Thompson understands that the Bureau of Prisons has sole discretion in designating the institution at which he will serve any term of imprisonment imposed.

## Waiver of Rights

6.      Mr. Thompson understands that by pleading guilty, he surrenders certain rights as outlined below:

a.      If he had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if Mr. Thompson, the Government, and the Court all agreed.

b.      If he elected a jury trial, the jury would be composed of twelve individuals selected from the community. Undersigned counsel and Mr. Thompson would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and Mr. Thompson would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before Mr. Thompson could be found guilty of any count. Similarly, all twelve jurors would have to agree in order for Mr. Thompson to be found not guilty. If a unanimous verdict of guilty or not guilty did not occur, the government could retry the case as many times as is necessary in order to have a jury reach a unanimous verdict. The Court would instruct the jury that Mr. Thompson was presumed to be innocent, and that presumption could be overcome only by proof that satisfied the jury beyond a reasonable doubt.

c.      If he went to trial, the Government would have the burden of proving Mr. Thompson guilty beyond a reasonable doubt. He would have the right to confront and cross-examine the Government's witnesses. He would not have to present any defense witnesses or

evidence whatsoever. If Mr. Thompson wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

      d.    He would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court would instruct the jury that it could not draw any adverse inference from his decision not to testify. In other words, the Court would tell the jury that it could not believe that Mr. Thompson was guilty simply because he did not testify.

      e.    If he were found guilty after a trial, he would have the right to appeal the verdict to see if any errors were committed which would require a new trial or dismissal of the charges against him.

      f.    By pleading guilty, he will be giving up all of these rights, except the right to appeal the sentence. By pleading guilty, Mr. Thompson understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements he makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

      g.    If the Court accepts Mr. Thompson' plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

      h.    By pleading guilty, Mr. Thompson will also be giving up certain valuable civil rights.

## Advisory Sentencing Guidelines Apply

    7.    Mr. Thompson understands that a sentencing guidelines range for this case (henceforth the "advisory guidelines range") will be determined by the Court pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. Mr. Thompson further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, and must take into account the advisory guidelines range.

## Statement of Facts

    8.    See Attachment A

## Potentially Applicable Sentencing Guidelines

    9.    Mr. Thompson understands, agrees and stipulates that the following sentencing guideline factors apply:

## Count 1 – Robbery of August 8, 2013

    a.   Pursuant to U.S.S.G. § 2B3.1, the base offense level is 20.

    b.   Pursuant to U.S.S.G. § 2B3.1(b)(1), 2 levels are added because the property of a financial institution was taken.

    c.   Pursuant to U.S.S.G. § 2B3.1(b)(2)(C), 5 levels are added because a firearm[1] was brandished.[2]

    d.   Pursuant to U.S.S.G. § 2B3.1(b)(7)(B), 1 level is added because $26,000 in U.S. currency was taken.

    Total offense level = 28

## Count 2 – Robbery of November 19, 2013

    a.   Pursuant to U.S.S.G. § 2B3.1, the base offense level is 20.

    b.   Pursuant to U.S.S.G. § 2B3.1(b)(1), 2 levels are added because the property of a financial institution was taken.

    c.   Pursuant to U.S.S.G. § 2B3.1(b)(2)(C), 5 levels are added because a firearm was brandished.

    d.   Pursuant to U.S.S.G. § 2B3.1(b)(7)(A), there is no increase for the amount of currency taken because the $3,450 taken is less than $10,000.

    Total offense level = 27

## Count 3 – Robbery of November 26, 2013

    a.   Pursuant to U.S.S.G. § 2B3.1, the base offense level is 20.

    b.   Pursuant to U.S.S.G. § 2B3.1(b)(1), 2 levels are added because the property of a financial institution was taken.

    c.   Pursuant to U.S.S.G. § 2B3.1(b)(2)(C), 5 levels are added because a firearm was brandished.

    d.   Pursuant to U.S.S.G. § 2B3.1(b)(7)(A), there is no increase for the amount of currency taken because the $6,029 taken is less than $10,000.

    Total offense level = 27

---

[1] Mr. Thompson reserves the right to argue for Counts 1,2 &3 that the instrument used in the robberies does not qualify as a "firearm."

[2] It is Mr. Thompson understanding that the Government will contend that 6 levels should be added, not 5 levels, because Mr. Thompson otherwise "used" the firearm pursuant to U.S.S.G. § 2B3.1(b)(2)(B).

**Combined Offense Level for Counts 1, 2, & 3**

Pursuant to U.S.S.G. § 3D1.4:

    a.  Count 1 has the highest offense level (28) and is counted as one unit.

    b.  Count 2 accounts for one additional unit because it is 1 level less serious than Count 1.

    c.  Count 3 accounts for one additional unit because it is 1 level less serious than Count 1.

    d.  Together, Counts 1, 2 and 3 constitute 3 units which corresponds to a 3-level increase in the offense level.

    e.  **Therefore the combined offense level (before any acceptance reduction) for Counts 1, 2, & 3 is 31.**

## Criminal History

10.    Mr. Thompson understands that there is no agreement as to his criminal history, which will be determined, in part, by the preparer of the Pre-Sentence Report, and that his criminal history could alter his offense level and his advisory guideline range.

## Immigration Consequences

11.    Mr. Thompson understands that by pleading guilty he may be subject to deportation or other loss of immigration status. He recognizes that if he is not a citizen of the United States, that his guilty plea may have consequences with respect to his immigration status, and lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding(s), and that no one including his attorney or the Court, can predict with certainty the effect of a conviction on his immigration status. Mr. Thompson nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

## Sentence Within the Discretion of the Court

12.    Mr. Thompson understands that under the current state of the law in the federal system, the sentence to be imposed is within the sole discretion of the Court. He understands that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. In determining the factual basis for the sentence, the Court will consider the attached statement of facts, together with the results of the presentence investigation, and any other relevant information. Mr. Thompson understands that the Court is under no obligation to accept any recommendation from the defense or the government regarding the sentence, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. Mr. Thompson understands that if the Court should impose any sentence up to the maximum established by statute, he cannot, for that reason alone, withdraw his guilty plea, and will remain bound to his guilty plea. Mr. Thompson understands that the prosecutor, his counsel, or the Court cannot make a binding prediction, promise, or representation as to what guidelines range or sentence Mr. Thompson will receive. Mr. Thompson agrees that no one has made such a binding prediction or promise.

13.     Mr. Thompson understands that at the discretion of the Court, he may be entitled to a 2 level reduction in his total offense level for his prompt acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a).

14.     Mr. Thompson understands that the Court may enter an order of restitution pursuant to 18 U.S.C. §§ 3663, 3663(A), and/or 3583, requiring him to pay restitution for the full or partial amount of the actual, total loss caused by his offense conduct in relation to the three bank robberies charged in Counts 1, 2, and 3.

## **Conclusion**

I have carefully read this letter.  I have reviewed and discussed this letter this letter with my attorney, specifically the Factual and Advisory Guideline Stipulations.  I understand it, I voluntarily agree to it, and I do not wish to change any part of it.  I am completely satisfied with the representation of my attorney.

6/9/15
Date

Mark Thompson
Mark Anthony George Thompson

I have carefully reviewed every part of this letter with Mr. Thompson.  To my knowledge, his decision to plead guilty to the offenses charged in the Indictment as set forth in this letter is an informed and voluntary one.

6/9/2015
Date

Lucius T. Outlaw III
Assistant Federal Public Defender

cc:     Greg Bockin, Assistant United States Attorney (by email & ECF)

Attachment A — MARK ANTHONY GEORGE THOMPSON
Statement of Facts

MARK ANTHONY GEORGE THOMPSON ("THOMPSON"), age 49, is a resident of Baltimore, Maryland.

On August 8, 2013, at approximately 9:24 a.m., THOMPSON entered the Bank of America located at 6400 Ridge Road, Sykesville, Maryland, and announced a robbery. After announcing the robbery, THOMPSON, wearing a black ski mask and armed with a black ~~semi-automatic handgun,~~ demanded that everyone lay on the ground. THOMPSON produced his own bag and demanded that the teller give him funds from the bottom of the drawer. THOMPSON pointed the handgun at the teller while making his demand. The teller complied and THOMPSON fled the bank, using the front door, along with $26,000 in U.S. currency. *[handwritten: LTO II MT — pellet gun]*

On November 19, 2013, at approximately 9:04, THOMPSON entered the Wells Fargo Lutherville branch, located at 1730 York Road, Lutherville, Maryland. THOMPSON approached the victim teller at teller station #1, brandished a small black ~~semi-automatic handgun~~ and threw a small plastic bag on the counter. THOMPSON then pointed the handgun at the victim teller and shouted "Give me all your money!" After obtaining $3,450 from the victim teller, THOMPSON then turned and walked out of the bank with $3,450 in U.S. currency. *[handwritten: LTO II MT — pellet gun]*

On November 26, 2013, at approximately 10:00 a.m., THOMPSON entered the TD Bank located at 1800 Eastern Boulevard, Essex, MD 21221. THOMPSON had a mask over his lower face, and black gloves. THOMPSON produced a black ~~semi-automatic handgun~~ pointed it at the teller who was working at station #2, THOMPSON demanded money from the teller. The victim teller complied with the demand and opened her top drawer, removed the money and handed it to THOMPSON. THOMPSON was not satisfied, and demanded more money. The victim teller told THOMPSON that was all the money she had. THOMPSON then shouted "Give me the reserve!" The victim teller removed additional money and a dye pack from a second drawer and handed it to THOMPSON. THOMPSON then ran out of the bank with $6,029 in U.S. currency. *[handwritten: LTO II MT — pellet gun]*

The deposits of each of the banks that THOMPSON robbed were insured by the Federal Deposit Insurance Corporation.

*****

I have read this statement of facts, and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

6/9/15
_____
Date

*Mark Thompson*
_____
Mark Anthony George Thompson

I am Mark Anthony George 'Thompson's attorney. I have carefully reviewed that statement of facts with him.

6/9/15
_____
Date

_____
Lucius T. Outlaw III, Esq.

2